[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On November 30, 1999, the plaintiff wife filed a complaint requesting "a legal separation; alimony; fair and equitable property settlement; an allowance to prosecute; and such other relief as the Court injustice and equity believe appropriate." On November 17, 1999, the defendant husband appeared by counsel; filed an answer admitting paragraph 1 through 6 of plaintiffs complaint and filed a cross complaint requesting "a legal separation; an equitable division of the jointly-owned property; an assignment of all or part of the estate of the Plaintiff, including an assignment of the Plaintiffs interest in certain real property located at 2 Duck River Lane, Old Lyme, Connecticut, pursuant to Connecticut General CT Page 14814 Statute 46b-81; and such other and further relief as the Court may deem equitable."
On February 28, 2000, the defendant filed a request for leave to amend a cross complaint and amended cross complaint substantially similar to his original cross complaint with the one exception being his request for "a dissolution of marriage." No objection was filed within the time frame set forth in Connecticut Practice Book § 10-60 and consequently the amendment shall be deemed to have been filed by consent.
On March 6, 2000, the court (McLachlan, J.), after a pendente lite hearing on plaintiffs motion for alimony and allocation of debt., pendente lite, ordered the defendant to "continue to pay mortgage, real estate taxes, fuel for house, utilities, car related expenses, gas . . ." In addition, the defendant was ordered to pay alimony in the amount of $450.00 per week.
On February 22, 2001, the plaintiff filed a 56b-15 application for relief from abuse against the defendant, which was granted by the court, McLachlan, J., and scheduled for a hearing on March 8, 2001. On March 8, 2001, by agreement, said restraining order was continued six months.
On May 21, 2001, the plaintiff filed a motion for contempt, pendente lite, alleging that the defendant failed to pay her approximately $5,100.00 in alimony. On June 4, 2001 pursuant to a court order (Kenefick, J.), the defendant paid the plaintiff $2,735.00 leaving a balance owed of $2,365.00 and the plaintiffs motion for contempt was continued one week. On June 4, 2001, the defendant filed a motion for contempt, pendente lite, alleging that the plaintiff violated the "automatic court orders" by using in excess of $10,000.00 from the Neibauer Family Trust. On July 1, 2001, the parties stipulated and the court (Robaina, J.) ordered, inter alia, that the pending motions for contempt shall be deferred to time of trial. Both parties appeared with counsel at trial on September 5 through 7, 2001 and presented testimony and exhibits. The court, after hearing and reviewing the evidence, together with the post trial filings of the parties, finds the following facts.
The wife whose birth name was Eva I. Worts married the defendant husband in Marblehead, Massachusetts on May 29, 1976. Both parties have resided continuously in the state more than one year before the filing of their respective complaints. All statutory stays have expired. This court has jurisdiction of this matter. This is the second marriage for both parties. The plaintiffs first husband died as a result of an airplane crash while flying for TWA. The defendant was a widower. At the time of the marriage between the plaintiff and the defendant, each party had two CT Page 14815 children. The plaintiffs children were Devon, age 4 and Haley, age 2. The defendant's children were Elizabeth, age 11 and Jennifer, age 9. All four received Social Security benefits from their deceased parents. The plaintiffs children's Social Security benefits were used initially to meet their everyday needs. At a later date, when those benefits were no longer needed for life's necessities, they were invested and funded, to a large degree, their education. The Social Security benefits received by Elizabeth and Jennifer, although much smaller, were similarly invested for their benefit after a time. There are no children of this marriage.
The plaintiff is 58 years old and takes a variety of medications including Fermhet, Paxil, Synthroid and Depacote for the treatment of various health problems such as seizures, depression and hormone deficiencies. Although her prognosis is uncertain, she presents as a hale individual and in no apparent distress. She received a Bachelor of Science degree in music education from Penn State University in 1965 and has engaged during the course of the marriage in part-time employment in real estate and retail. She currently is employed on a very part-time basis at an Essex boutique and occasionally plays trumpet with the band "Tuxedo Junction." She plans to attain full-time employment. The evidence demonstrates, and the court finds, that the plaintiff has an earning capacity of $20,000.00 per annum.
The defendant is 64 years old and is presently retired. The defendant receives roughly $2,500.00 a month from Social Security and his naval pension. He is currently taking courses to fulfill the requirements of a baccalaureate degree from Connecticut College. He was by profession a pilot. He left active duty in the U.S. Navy in 1962 and was employed by Allegheny Airlines and its successors until his forced retirement upon becoming 60 years old in 1997. From 1962 to 1978, the defendant served in the U.S. Naval Reserves, one weekend per month and for a period of two weeks each summer.
Both parties brought considerable assets into the marriage. The wife brought primarily her late husband's estate proceeds and life insurance benefits; the husband., nearly all of his naval pension and his Allegheny pension valued at $170,000.00 at that time. The value of the wife's pre-marital assets was greater than that of the husband's. Subsequent to their marriage, the parties consolidated their households and lived together as a merged family raising the four children. The husband was the primary wage earner and to a large extent, the sole wage earner. This is not to suggest that the wife made no contributions. She was the daily care giver for the children until they went away to school. She performed the normal chores associated with running a household of six. Her worker's compensation benefit of $380.00 per month went toward family expenses for 15 years. During the course of this long-term marriage, a CT Page 14816 financial olio was created. Her pre-marital assets were used to buy a portion of vacation and income producing properties. His earnings supported the entire household. Monies were invested; gains were achieved and losses sustained. The court views its task as unscrambling this omelet in a fair and equitable maimer. The court finds after hearing and reviewing the evidence and taking into consideration the parties' pre-marital assets, post-marriage employment and nonfinancial contributions, investments, and capital expenditures that the parties contributed to their current assets on a 50/50 basis.
The wife claims that the husband was abusive, controlling and insensitive. The husband portrays his wife as an ungrateful spendthrift. Neither are blameless nor entirely blameworthy.
Both parties were contemptuous of court orders; the defendant is in arrears on the pendente lite alimony and the plaintiff violated the Automatic Order One, by excessive charging on the Paine Webber MasterCard:
 "Neither party shall sell, transfer, encumber, conceal, assign, remove, or in any way dispose of, without the consent of the other party in writing, or an order of the court, any property, individually or jointly held by the parties, except in the usual course of business or for customary and usual household expenses or for reasonable attorney fees in connection with this action."
The court finds both parties in contempt. The parties' contemptuous behavior has been considered in fashioning the court orders.
The court finds that the marriage has broken down irretrievably. The court dissolves the marriage based upon the irretrievable breakdown. The court in entering its orders considers the provisions of Connecticut General Statutes §§ 46b-40, 46b-63, 46b-81 and 46b-82 as well as other statutes relevant to the issues presented and enters the following additional orders:
1. That the plaintiff wife exercise her right under Article III, First Amendment, to the Neibauer Family Trust dated December 14, 1990 to withdraw the assets of the trust estate.
2. That the real estate located at 2 Duck River Lane, Old Lyme, Connecticut be sold and that the proceeds divided after payment of the first mortgage and normal and necessary closing costs as follows. The first $100,000.00 to the plaintiff and the remainder shared equally on a CT Page 14817 50/50 basis.
3. That the Paine Webber account be divided with the defendant husband receiving the first $100,000.00 and the remainder shared equally on a 50/50 basis.
4. That all retirement and mutual fund accounts, belonging to the respected parties be shared equally between the parties on a 50/50 basis.
5. That the defendant husband retain his Social Security income and Navy pension free of claim by the plaintiff wife.
6. That the defendant husband pay to the plaintiff wife alimony in the amount of $200.00 per week until the plaintiff wife is eligible to receive Social Security benefits and pay to the plaintiff $100.00 a week thereafter. Alimony is tax includable to the plaintiff, tax deductible to the defendant. Alimony is non-modifiable as to both amount and term except that the alimony may be modified upon motion of the defendant and finding by the court that the plaintiff has cohabited by statute. Alimony shall terminate on the death of the defendant or the death or remarriage of the plaintiff
7. That each party shall be responsible for their respective attorney's fees.
8. That wife's prior married name of Cheshire is restored to her.
Dubay, J.